No. 21,930.

THE TREGO COUNTY STATE BANK, *Appellee*, v. CHARLES HILL-MAN, *Defendant*, (AUGUST HILLMAN and GEORGE BAUER, Interpleaders, *Appellants*.)

SYLLABUS BY THE COURT.

1. SALE—MERCHANDISE—*Bulk-sales Law Not Complied With—Subsequent Attachment Lien—Right of Subrogation*. Where the sale of a stock of merchandise and fixtures is void because of failure to comply with the provisions of the bulk-sales law (Gen. Stat. 1915, §§ 4894, 4895), the purchasers, although they act in entire good faith, and pay full value, are not entitled to subrogation to claims of general creditors as against a debt due to a creditor who has secured a valid attachment lien upon the stock and fixtures subsequent to the sale.

2. SAME—*Subrogation—Equity*. Subrogation is an equitable right, and in such a case, equity follows the law and cannot ignore the rights procured by the diligent creditor.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion filed February 8, 1919. Affirmed.

*W. L. Sayers*, of Hill City, for the appellants.

*Herman Long*, of Wakeeney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The Trego County State Bank sued Charles Hillman on promissory notes and caused an attachment to be levied on a stock of merchandise and fixtures which he had sold to appellants, who were in possession. The appellants filed an interplea setting up their rights. Judgment was taken against Charles Hillman by default for $586, the amount due on the notes, and subsequently the issues raised by the interplea were tried. The court found the facts, which, briefly summarized, are:

The property levied upon under the attachment consisted of a stock of merchandise and fixtures owned by and in the possession of Charles Hillman on March 29, 1917; on that day he sold the property to the appellants, without complying with any of the provisions of the bulk-sales law (Gen. Stat. 1915, §§ 4894, 4895); the sale was made in good faith, and $1,455, which was the full value, was paid for the property. At the

time of the sale the stock and fixtures were covered by a mortgage held by a wholesale grocery company on which there was due the sum of $815.84. Of the purchase money, $355 was paid direct to the mortgagee, and $1,100 was paid to Charles Hillman. Subsequently, he paid the balance of the mortgage debt out of the proceeds of the sale, and the mortgage was released of record. He was indebted at the time of the sale to sundry persons and firms in the total sum of $4,140.

For the purpose of protecting their title to the stock and fixtures, the appellants paid additional sums which were applied on this indebtedness, and which were paid prior to the commencement of the action, the total amount paid by them being $1,785.37.

As conclusions of law, the court held that by reason of the failure to comply with the provisions of the statute the sale was absolutely void; that the attachment was rightfully issued on the facts proven; that the chattel mortgage constituted a valid lien on the property to the amount of $815.84; that the appellants are not entitled to subrogation as to any items paid from the proceeds of the sale, except the amount paid by them on the chattel mortgage; but that they are entitled to be subrogated to the rights of the holder of the chattel mortgage and to have the mortgage kept alive for their benefit. The appellants were ordered to pay to the clerk of the court a sum sufficient to satisfy plaintiff's judgment, interest and costs, not, however, to exceed the difference between $1,455, the value of the stock, and $815.84, the amount paid by them on the mortgage. In case they failed for 60 days to make the payment, an order of sale of the property was to issue.

The appellants make the contention that the court "should have gone further in its conclusions of law, and should have allowed appellants to be subrogated to the amounts paid general creditors, *and treating the plaintiff* as a general creditor, it would have to pro rate with other creditors of equal standing, and equal diligence." (Italics ours.)

The argument starts with the false premise that the bank should be treated as a general creditor, whereas, in fact, it procured an attachment which it caused to be levied upon the defendant's property, thereby lifting itself out of the class of general creditors, and advancing to that of a creditor with a lien superior to the claims of general creditors, including any

claims of purchasers from the defendant, who had failed to comply with the bulk-sales law. The bank might have sued the appellants in a direct action to recover and might have applied, upon the indebtedness due from defendant, the amount which the trial court required appellants to pay. (*Bank v. Davis,* 103 Kan. 672, 175 Pac. 972.)

It is insisted that the decision holding appellants entitled to subrogation as to the item represented by the chattel mortgage, and not as to other items paid by them, results in depriving them of "their equitable rights." The authorities cited to support the contention are from decisions of this and other courts which relate to the doctrine of equitable subrogation. Here we have to deal with a situation where equity follows the law. It is true that the right of subrogation rests primarily upon equitable principles, but equity cannot ignore the attachment law, nor the rights which a diligent creditor obtains by his attachment. Upon this proposition it is not deemed necessary to cite authorities.

The judgment is affirmed.